RICHMOND v. OREGON R. & NAV. CO.

(Circuit Court of Appeals, Ninth District. May 1, 1905.)

No. 1,109.

1. RAILROADS—FIRES—DEFECTIVE APPLIANCES—NEGLIGENCE.

Where a fire was set by sparks emitted from one or both of the locomotives hauling a train, in April, 1903, when it was very dry, and one of the locomotives was still equipped with a perforated plate instead of a wire netting spark arrester, which plates were only used in the winter time when there was no risk from fire, and the plate which had been in the other locomotive had been changed for a netting on the morning of the fire, the question of defendant's negligence was for the jury.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, §§ 1742–1744.]

2. SAME—APPEAL—THEORY OF CAUSE.

Where, during the trial of an action against a railroad company for fire alleged to have been caused by certain locomotives, plaintiff's counsel, on being asked which of the two engines he claimed set the fire, replied that it was one of two engines attached to a certain train, and defendant introduced evidence concerning the spark-arresting equipment of both of such engines, it was not entitled to claim on appeal that the question of negligence with reference to one of the engines was not in issue.

In Error to the Circuit Court of the United States for the Southern Division of the District of Washington.

John L. Sharpstein and Frank B. Sharpstein (A. P. Black, of counsel), for plaintiff in error.

W. W. Cotton, Lester S. Wilson, and Henry F. Conner, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. This is an action brought by the plaintiff in error to recover from the defendant in error the sum of $5,448, the value of 5,448 sacks of barley, which, it is alleged, were destroyed by fire by reason of the negligence of the defendant in error. It is alleged that the barley in question was stored in a warehouse at Alto, in the state of Washington, which warehouse was situated in the immediate vicinity of the line of railroad belonging to and operated by the defendant in error; that on the 27th day of April, 1903, while engines of the defendant in error were standing and passing along the track opposite and close to the said warehouse, large quantities of sparks, coals, and burning cinders were emitted and thrown therefrom and scattered thereby over and upon the said warehouse, causing the destruction of the warehouse and of the barley stored within it. The defendant in error denies any negligence upon its part in the operation of its engines, and alleges that the fire occurred without any carelessness or negligence whatever by it or its agents or servants.

The case was tried before a jury. No question appears to have been made as to the destruction of the barley or its value. At the conclusion of the testimony on behalf of the plaintiff the defendant

moved for a nonsuit, upon the ground that the evidence was insufficient to justify a verdict in favor of the plaintiff. This motion was denied. Testimony was then introduced on behalf of the defendant, and upon the conclusion of the evidence the defendant moved the court to instruct the jury to return a verdict in favor of the defendant. This motion was granted and the jury so instructed. The action of the court in instructing the jury to return a verdict in favor of the defendant is assigned as error.

From the evidence it appears that at Alto station on defendant's line of road there is a down grade to the track from east to west. A passenger train known as "Train No. 7," west bound, passed Alto station about 2:30 p. m. on April 27, 1903. This train was hauled into Alto station up a steep grade, extending from Starbuck to a point a short distance east of Alto depot, by two engines, numbered 87 and 133. Engine No. 87 was the regular engine, and engine No. 133 was the helper, coupled on ahead of the regular engine.

The warehouse in which plaintiff's barley was stored was located on the south side of the main track, about 144 feet west of the west end of the depot, which was on the opposite or north side of the track. These compass directions, and those hereafter given, are not strictly accurate, as appears from the maps introduced in evidence, but they are the directions given by the witnesses, and are sufficiently correct to give a general idea of the location of the tracks and buildings at Alto station. The distance from the main track to the warehouse was about 20 feet. A spur track on the north side of the main track left the latter track at a switch about 64 feet east of the east end of the warehouse, and about 80 feet west of the west end of the depot. When the train arrived at Alto station from the east, the head engine, No. 133, stopped at a sufficient distance east of the switch to the spur track to permit that switch to be turned, and allow the head engine, after it had been detached from the train, to go off on the spur track, having completed its run as helper. When the head engine stopped for this switch its front end was not less than 64 feet east of the east end of the warehouse, and the second engine was the length of the first engine still further east. The train was opposite the depot, the mail car directly opposite the depot door. When the head engine is cut off the air is released, which is taken by the second engine, and the brakes set to keep the train from moving until the engineer receives the signal to go. The train stops for a minute or so, and then proceeds on its way westward with the regular engine. This was what occurred on the day of the fire. The helper engine remained on the spur track until the train had passed. The fireman then opened the switch, and the engine backed out onto the main track, and returned eastward down the hill to Starbuck. The helper engine passed in front of the warehouse a short distance to the north of the main track, and to a point some 50 or 100 feet west of the extreme end of the warehouse, and in returning again passed in front of the warehouse.

The testimony on behalf of the plaintiff was to the effect that the wind at this time was blowing across the track towards the warehouse in which plaintiff's barley was stored. There had been no

ráin for a period of about 25 days, and the weather was described as being very dry. No fire was used in or about the warehouse. Between five and ten minutes after the passenger train had passed Alto station the warehouse was discovered to be on fire at two places on the roof, about six or eight feet apart, halfway between the comb and the eaves. The fire destroyed the warehouse and its contents. A brakeman named Allen, in the employ of the defendant, was called as a witness by the plaintiff. He testified that when the train was leaving the depot, and about opposite the warehouse, the engine checked up in speed and then started on again. The driving wheels of the engine seemed to revolve a little faster than they would in natural motion. He was asked by the court if he noticed smoke or sparks or cinders or anything of that kind coming from the smokestack of the locomotive. He said he did not.

This evidence on the part of the plaintiff was deemed sufficient to go to the jury as tending to establish the fact that the fire was occasioned by a spark from one of the locomotives, and to call upon the defendant to show that it was not negligent. This action of the court is not now a subject of controversy. The only question presented in the record for our consideration is whether, upon the conclusion of the trial, there was evidence sufficient to go to the jury tending to show that the defendant or its employés had been in any respect negligent. The evidence on this point related (1) to the handling of engine No. 87 by the engineer, and (2) to the equipment of the engines with suitable spark-arresting devices.

There was evidence that when the train was leaving the depot, and was about opposite the warehouse, engine No. 87, hauling the train, was checked up in speed and then started again, and that the driving wheels of the engine seemed to revolve a little faster than they would in natural motion. It is contended on the part of the plaintiff that there was a slipping of the driving wheels, and that this action caused the engine to exhaust and throw out more sparks than it otherwise would do. But the same witness who testified to the action of the driving wheels also testified that he did not notice smoke or sparks or cinders coming from the smokestack of the locomotive. The incident itself is explained by the evidence on the part of the defendant that when the head engine is cut off from the train the engineer on the other engine takes full control of the train, and cuts his valve in so that in descending the grade he can stop the train in case of an emergency; and that, to insure that he has got the air, when he starts the train he makes the application and sets the brakes slightly, to feel the shock, to be sure he has got the braking power in his valve. He then releases, "and lets the train drift." As the train was on the down grade at this point, and as no sparks or cinders were seen coming from the locomotive, the evidence relating to the taking of the air brake was sufficient to overcome whatever inference or presumption of negligence there might be arising out of the evidence concerning the action of the driving wheels of the engine.

With respect to the spark-arresting devices of the two engines, it appears that engine No. 87 was on that day equipped with a wire

netting four meshes to the inch, in which the openings in the meshes were $5/32$ of an inch square, and that engine No. 133 was equipped with a perforated plate, in which the openings were $5/32$ of an inch wide and $7/8$ of an inch long. The evidence tends to show that the perforated plate is used in the engines during the winter time when there is no risk from fire, while the wire netting is placed in the engine in the summer time to prevent the setting of fires. The wire netting had been placed in engine No. 87 in place of a perforated plate on the morning of April 27th, the day of the fire at Alto station. The same degree of care that made a change in the spark-arresting device in engine No. 87 required that there should have been a change made to the wire netting in engine No. 133; and the retention of the perforated plate in the latter engine was, under the circumstancs, such evidence of neglect that the question should have been submitted to the jury.

It is contended, however, by counsel for the defendant in error, that. the question of negligence in engine No. 133 cannot be considered here, for the reason that the case was tried in the court below solely upon the' theory that the fire was set by engine No. 87. The record is to the contrary. It appears that early in the trial counsel for the defendant asked counsel for the plaintiff if he claimed that it was either engine No. 87 or engine No. 133 attached to train No. 7 that set the fire, to which counsel for plaintiff replied that it was one of the engines attached to the train coming to Walla Walla that day. Furthermore, counsel for the defendant introduced evidence on the part of the defendant concerning the spark-arresting equipment of both of these engines, showing that he understood that he was to meet the presumption of negligence arising from the fact that sparks from one or the other of these engines set fire to the warehouse.

The judgment of the Circuit Court is reversed, with instructions to grant a new trial.